# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Josie Arvizu and Erika Hernandez-Nunez,<br>Defendants. | No. CR-17-01056-TUC-JGZ (BPV)<br>**ORDER** |

On January 18, 2018, Magistrate Judge Bernardo P. Velasco issued a Report and Recommendation ("R&R") (Doc. 60) in which he recommended that Defendant Josie Arvizu's Motion to Suppress evidence obtained as a result of a traffic stop (Doc. 42), in which Defendant Erika Hernandez-Nunez joined (Doc. 44), be granted. The government filed an Objection to the R&R on February 22, 2018. (Doc. 71.) Defendant Hernandez-Nunez filed a response to the government's objection on March 4, 2018. (Doc. 73.) For the reasons stated herein, the Court will reject the R&R and deny the Motion to Suppress.

**STANDARD OF REVIEW**

The Court reviews de novo the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the R&R. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

//
//

**FACTUAL BACKGROUND**

The factual background contained in Magistrate Velasco's R&R (Doc. 60) is adopted as supplemented by the additional facts stated in this Order.

**DISCUSSION**

The government objects to the Magistrate Judge's finding that Agent Landess lacked reasonable suspicion to stop Defendants' vehicle. A border patrol agent may conduct "brief investigatory stops" without violating the Fourth Amendment "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Reasonable suspicion is defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* (citation omitted). The reasonable-suspicion standard is not a particularly high threshold to reach. *Id.* "Although ... a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274. When reviewing a border patrol officer's reasonable suspicion, the Court must consider the totality of the circumstances, including characteristics of the area, proximity to the border, usual patterns of traffic and time of day, previous alien or drug smuggling in the area, behavior of the driver, appearance or behavior of passengers, and the model and appearance of the vehicle and the agent's training and experience. *See Valdes-Vega*, 738 F.3d at 1079 (citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 884–85 (1975)). Not all of these factors must be present or highly probative in every case to justify reasonable suspicion. *See id.*

The testimony provided by Agent Perez and Agent Landess established that numerous factors were present in this case. On June 11, 2017, Agent Perez was stationed with a mobile camera unit on a hill near the San Miguel West Church. The church is located in San Miguel, Arizona, 4-5 miles north of the United States-Mexico border. The church is vacant and used exceedingly rarely for religious gatherings. Because of its

proximity to the dense Vamori Wash and the international border, the church is known by Border Patrol agents to be a pick-up location for illegal aliens, who cross the border and reach the church under the coverage provided by the Vamori Wash. In the six months prior to June 11, 2017, agents tracked foot sign from Vamori Wash to the church parking lot approximately once a week, and agents arrested several illegal aliens waiting near the church for transportation. In the weeks before June 11, 2017, Agent Perez observed people run from the Vamori Wash to a vehicle waiting in the area immediately surrounding the church; agents subsequently apprehended four illegal aliens in the vehicle. During the week of June 11, 2017, the church was mentioned at the agents' muster as a possible pick-up location. On June 11, 2017, Agent Perez received an alert from a sensor placed near the church and observed Defendants' vehicle leaving the church area. Defendants' vehicle had not been at the church when Agent Perez observed the area ten minutes earlier. Defendants' vehicle was not familiar to Agent Perez, drove 10 miles per hour faster than local traffic, and kicked up dust on the road. When Agent Perez contacted agents in the area and Agent Landess began to follow the vehicle, the vehicle slowed down. This was suspicious to Agent Landess, because locals in the area know that Border Patrol cannot enforce traffic laws and therefore do not slow for Border Patrol vehicles. Defendants' vehicle was registered in Tucson and had crossed the border at Douglas, four hours away, less than 72 hours earlier. Agent Landess observed a disturbance in the dirt on the vehicle's trunk, consistent with handprints previously found on the trunks of vehicles transporting illegal aliens in the trunk.[1] Under the totality of the circumstances, Agent Landess had reasonable suspicion to stop Defendants' vehicle.

//

//

---

[1] Defendant Hernandez-Nunez argues in her response to the government's objection that Agent Landess did not observe the handprints until after he stopped Defendants' vehicle. (Doc. 73.) This is incorrect. Agent Landess testified that he noticed markings that appeared to be handprints prior to the vehicle stop. (TR 11/30/17, pg. 73, line 22 – pg. 74, line 5.) Agent Landess confirmed his observations after the vehicle stop. (TR 11/30/17, pg. 92, lines 8-24.)

- 3 -

**CONCLUSION**

After an independent review of the pleadings, exhibits and transcript, IT IS HEREBY ORDERED that:

1. The Report and Recommendation (Doc. 60) is REJECTED; and
2. Defendant's Motion to Suppress (Doc. 42) DENIED.

Dated this 6th day of March, 2018.

_____
Honorable Jennifer G. Zipps
United States District Judge